738 So.2d 267 (1999)
Anthony CRIST, Appellant,
v.
Peggy Crist LAWRENCE, Appellee.
No. 97-CA-01342-COA.
Court of Appeals of Mississippi.
February 9, 1999.
Rehearing Denied May 18, 1999.
Certiorari Denied August 26, 1999.
*268 W. Richard Johnson, Attorney for Appellant.
James E. Renfroe, Montgomery, Attorney for Appellee.
BEFORE McMILLIN, P.J., COLEMAN, and SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Anthony Crist appeals denial of his motion for modification of child support by the Warren County Chancery Court. Error is predicated on the court's holding that $800 per month support was properly classified as child support, that the evidence did not warrant modification of this support, and that Mr. Crist had failed to meet his burden of showing a material change in circumstances on the part of Peggy Crist. Agreeing that the chancellor permitted labels to control over substance, we reverse and remand for additional proceedings.

FACTS
¶ 2. The parties were married in 1989. On January 16, 1997, a divorce based on irreconcilable differences was granted. Two daughters were born to the marriage, Mallory and Melody. Mallory has been diagnosed with significant physical disabilities including Arnold-Chiati malformation type I, seizures, an over growth syndrome, and a cleft on her brain known as a ventriculomegaly. Doctors have informed Ms. Crist that the child requires constant attention.
¶ 3. In the original divorce decree and property settlement agreement, Mr. Crist agreed to child support payments of $800 per month. Neither side submitted income and expense sheets during those proceedings though they were submitted for the contempt and modification trial. Ms. Crist received primary custody of both children and resided in the former marital domicile with them until a few weeks after the divorce when she moved in with the man who is her current husband and sublet the former marital residence. Ms. Crist's current monthly income consists of $800 in child support from her ex-husband, $435.60 in Supplemental Security Income (SSI) and $540 in rent. The divorce decree obligated her to pay the house note which was $540 per month and a car note which was approximately $200 per month.
¶ 4. Anthony Crist was employed with the Batesville Casket Company at the time the couple petitioned for divorce. He was earning $14.99 per hour when the divorce decree was entered and had an adjusted gross income of approximately $400 per week. Within five months of the divorce, Mr. Crist had petitioned the chancery court for a modification of his support obligations. He was making $15.44 per hour at the time of that proceeding. His request for modification of child support was refused though the chancellor did order Peggy Crist to pay $1,080 to Mr. Crist for house note payments he had made on their former residence.
DISCUSSION
ISSUES: 1. Were the monthly payments correctly described as "child support"?
2. Did Mr. Crist show a material change in circumstances?

3. Did the chancellor err in failing to modify "child support?"
¶ 5. Mr. Crist maintains that a portion of his monthly payments were intended to cover his ex-wife's car and house payments. Therefore they were in effect periodic alimony and not child support. He next argues that the chancellor failed to recognize a material change in circumstances and modify the child support amount. Due to the close interrelationship of the issues, they are discussed together.
*269 ¶ 6. The original divorce decree and accompanying property settlement agreement unambiguously state that Mr. Crist was to pay $800 per month in child support for the care and maintenance of his children. However, giving a particular label to support payments does not inexorably control. As has been said regarding different forms of alimony, we have abandoned "the tyranny of labels" and look to the substance of the payments. Overstreet v. Overstreet, 692 So.2d 88, 91 (Miss.1997). Divorce decrees are quasi-contractual in nature. Varner v. Varner, 666 So.2d 493, 496 (Miss.1995). "[W]here ambiguities may be found, the agreement should be construed much as is done in the case of a contract, with the court seeking to gather the intent of the parties and render its clauses harmonious in the light of that intent." Switzer v. Switzer, 460 So.2d 843, 846 (Miss.1984). The question then is what the parties meant by the term "child support."
¶ 7. The testimony here indicates over half of the $800 per month, all of which was denominated "child support," was to enable Ms. Crist to stay in the former marital residence. She admitted that she knew that payments for both the house and the car were going to have to come out of the $800 per month. Mr. Crist agreed that he thought those payments were to come out of his monthly $800 payments. He testified that his wife wanted the house and he wanted to ensure his children had a roof over their heads. Payments for a home and car can be considered proper child support. Diamond v. Diamond, 403 So.2d 129, 131-32 (Miss. 1981). Since there is no dispute that payments for the house and car notes were meant to come from the $800, the total of $740 leaves only an additional $60 per month. The statutory guidelines for support of two children would be 20% of adjusted gross income or approximately $320 per month at the time of the divorce. Miss.Code Ann. § 43-19-101(1) (Supp. 1998). Mr. Crist's obligation of $800 per month was half of his adjusted gross income. Thus considering Mr. Crist's support payments to be entirely child support would mean they were over twice the guideline amount, but considering them also as alimony would have left much too little just for child support. The label was an oversimplification more than a precise description.
¶ 8. We find that the "child support" payments necessarily were a merger of house and car payments as well as necessary other child support. We now examine whether there was a material change in circumstances. Ms. Crist moved out of the house for which the payments were being made within a few weeks of divorce and remarried within a few months. Ms. Crist's subleased the former marital home, thereby eliminating the financial burden of making house payments from the child support. This represents an obvious change in her financial condition and might itself justify a modification, at least where the recipient ex-spouse is cohabitating with another. See Hammonds v. Hammonds, 641 So.2d 1211, 1216 (Miss.1994). Either of these events alone might constitute a sufficient change of circumstances.
¶ 9. The chancellor simply held that there was no material change in circumstances. The court specifically said that "the amount of child support awarded to Mrs. Crist in the amount of $800 should not be decreased." The child support payment far exceeds the statutory guidelines, and there has never been an on-the-record justification for so radical a departure. True, the initial amount was in an agreed settlement, but the inclusion within the $800 of an amount of money sufficient to apply to the house and car notes is admitted by both parties. We find that there has been a material change of circumstances by Ms. Crist's remarriage and the elimination of the need for the house payment. What the new payment should be, considering that there are special needs of the children, is not something that we *270 address. We simply hold that an amount originally based on the former husband's having to pay for the house note of the former wife can no longer be justified on that basis after the former wife has remarried. The change in circumstances affects more than half the amount of the payment, a fraction that we find to be material.
¶ 10. Ms. Crist argues that her remarriage was predictable, as a large percentage of divorced individuals remarry. That something often happens does not mean that it is anticipated in the divorce, that is, that the payments provide for the eventuality. Requiring that the initial support payments take into account the possibility of remarriage may be unfair to the supported spouse if there is no remarriage. Unless the payments fully take into account the changed circumstances that occur with remarriage, providing in advance for the change may be unfair to the supporting spouse when there is a remarriage.
¶ 11. The initial divorce and agreement was entered when both spouses were represented by the same attorney. The failure more definitely to distinguish between different parts of the $800 per month payment may have arisen from that fact. We remand so that the chancellor may address the issues under the changed, unanticipated circumstances, and enter findings justifying child support.
¶ 12. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS REVERSED AND THE CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, and KING, JJ., CONCUR.
PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
IRVING and LEE, JJ., NOT PARTICIPATING.
PAYNE, J., dissenting:
¶ 13. Having reviewed the record, I disagree with the majority's conclusion that there has been a material change in circumstances in this case which warrants a reduction in child support. Accordingly, I respectfully dissent.
¶ 14. The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175(¶ 7) (Miss.App. 1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss. 1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991)).
¶ 15. Having established our very limited standard of review, I turn to the majority's reference to our abandonment of the "tyranny of labels" in alimony cases set forth in Overstreet. However, this case is not about alimony, but child support. There is but one label for child support. In this case, the couple have a child who requires Peggy's constant supervision and care, which necessarily prevents her from holding employment outside the home. It seems to me that the only change evident from the testimony is that Anthony has had a change of heart, and he does not want to offer an appropriate amount of support for his children. On cross-examination, Anthony admitted as much:
By Peggy's Counsel: So, basically, the problem with the eight hundred dollars, is that you don't want to pay it, you want it lowered, is that correct?
By Anthony: Right.
Peggy's Counsel: You agreed to pay eight hundred dollars child support, and you don't want to pay it, is that correct?
By Anthony: Right.
*271 Certainly, a desire not to support his children in a manner to which he agreed is not a material change in circumstance.
¶ 16. Second, the majority's discussion about ambiguities in property settlement agreements being subjected to general contract principles is, likewise, correct; however, parol evidence, that is the alleged agreement between Anthony and Peggy as to how the child support would be used, is inadmissible unless there is an ambiguity in the language of the child support agreement. It is well-settled that
where the language used in a written instrument has ordinary meaning, or is plain and unambiguous when read in connection with the other provisions of the instrument, parol evidence is not admissible for the purpose of showing the meaning of the language. The words of an instrument, unambiguous in themselves, cannot be controlled by proof that the parties used them with a definite and limited meaning, for the purpose of that particular instrument. Furthermore, if the instrument, taken as a whole and construing all its provisions together, is clear, parol evidence may not be admitted to construe it. Parol evidence may not be admitted to contradict clear terms of a written agreement, to explain common or technical terms when their meaning is plain and well understood, or, apart from a latent ambiguity, to create ambiguity where none otherwise exists.
29A AM.JUR.2D. Evidence § 1100 (1994).
¶ 17. I find no ambiguity in Anthony's agreeing to $800 per month in child support, and any outside agreement as to how the support would be utilized is simply not relevant where there is no ambiguity in the written instrument. Anthony was represented by counsel and signed the agreement, being fully aware of his income and his ability to pay. Further, there was nothing in the agreement that indicated how the child support would be used beyond general support and maintenance of the children. Any complaint that Anthony may have does not lie with the chancellor.
¶ 18. I would affirm the chancellor's decision.