851 So.2d 384 (2003)
Shelton Quent BURGE, Appellant,
v.
Lisa Marie BURGE, Appellee.
No. 2001-CA-01641-COA.
Court of Appeals of Mississippi.
April 8, 2003.
Rehearing Denied August 5, 2003.
*385 Shirlee Marie Fager-Baldwin, Hattiesburg, attorney for appellant.
Albert Lionel Necaise, Gulfport, attorney for appellee.
En Banc.
BRIDGES, J., for the court.
¶ 1. Shelton and Lisa Marie Burge obtained a judgment of divorce on grounds of irreconcilable differences. The Chancery Court of Pearl River County awarded custody of the Burges' two minor children to Lisa Marie, established a visitation schedule for Shelton, and ordered Shelton to pay child support and alimony; the court also divided the marital assets. Shelton appealed from the judgment.

STATEMENT OF THE ISSUES
I. DID THE COURT ERR IN AWARDING CHILD SUPPORT TO LISA MARIE BURGE?
II. DID THE COURT ERR IN AWARDING PERIODIC ALIMONY TO LISA MARIE BURGE?
III. DID THE COURT ERR IN THE DISTRIBUTION OF MARITAL ASSETS?
IV. DID THE COURT ERR IN SCHEDULING SHELTON'S VISITATION TIMES?

STANDARD OF REVIEW
¶ 2. This Court reviews the findings of fact by the chancellor for clear error, and will not reverse the findings unless they are manifestly wrong and not supported by substantial credible evidence, or unless the chancellor applied an erroneous legal standard. Vaughn v. Vaughn, 798 So.2d 431, 433 (¶ 9) (Miss.2001).

FACTS
¶ 3. Shelton and Lisa Marie Burge were married in 1990, and were finally separated on July 7, 2000. They have two children, a son and a daughter. Shelton filed a complaint for divorce alleging habitual cruel and inhuman treatment and adultery. Lisa Marie filed a cross-complaint, making *386 the same allegations. Shortly thereafter, upon the parties' motion, the court permitted them to withdraw their contested pleadings, and the parties applied for a consent divorce.
¶ 4. During the marriage, Shelton worked for NOAA as an oceanographer, which caused him to spend roughly one third of the time he was married at sea. Lisa Marie was employed merely sporadically during the marriage. Currently, Shelton is still employed by NOAA, and Lisa Marie is employed as a teacher by the Poplarville School District. The Burges acquired substantial marital property, including a mobile home on twenty acres of land, a 1998 Plymouth Breeze, a 1994 Ford F-150, debt nearing $150,000, Shelton's pension plan totaling $121,000, some horses, and a time share.

ANALYSIS

I. DID THE COURT ERR IN AWARDING CHILD SUPPORT TO LISA MARIE BURGE?
¶ 5. Shelton argues that the court erred when it departed from the guidelines on child support in Mississippi Code Annotated Section 43-19-101 (Rev.2000). Shelton claims that the court's findings of fact are insufficient to support a departure from the statutory guidelines on support. The court, using the financial records of the parties, determined that Shelton's earnings for several years prior to the divorce proceeding exceeded fifty thousand dollars, and in fact were closer to seventy thousand dollars. The court noted the variable nature of Shelton's gross earnings, and determined that rather than assess him child support costs near the higher end of what his earnings reflected (from 1997 to 2000, Shelton's annual gross adjusted income for tax purposes surpassed sixty thousand dollars), the court preferred to fix his adjusted gross income at fiftyfour thousand dollars annually. For comparison, the court found that Lisa Marie's adjusted gross income was $24,480.
¶ 6. Examining the court's stated rationale, we first note that Shelton's income has shown an undeniable tendency towards increase from fiscal year 1990 until June of fiscal year 2001, which is when the financial evidence before the court below terminates. Based upon the only year for which the court had complete tax records, 2000, Shelton's income was $73,317. Shelton's tax liability (both state and federal) was a combined $8,995; applying the appropriate calculations, we find that for fiscal year 2000, Shelton's adjusted gross income under Mississippi Code Annotated Section 43-19-101 (Rev.2000) was $64,322, significantly higher than the $54,000 that the chancellor fixed it at. Additionally, Shelton's income for fiscal year 2001 appeared to be neatly consistent with the above numbers, as through June 16, 2001, his gross pay year to date was $36,317.86.
¶ 7. Shelton argues also that in combination with the award of the homestead rent-free and the award of the car to Lisa Marie that his liability for support far exceeds the statutory 20% of his adjusted gross income. To support this proposition, he cites several cases that state that the court may consider occupancy of the marital home and other property as part of support obligations. See Diamond v. Diamond, 403 So.2d 129, 131, 132 (Miss.1981) (superseded by rule as noted in Queen v. Queen, 551 So.2d 197 (Miss.1989)); Crist v. Lawrence, 738 So.2d 267, 269 (¶ 7) (Miss.Ct. App.1999). However, these cases leave that decision within the discretion of the chancellor, who stated that the money owed on the homestead was part of the debt that Shelton was required to pay as part of the property distribution. We will not count that indebtedness toward Lisa *387 Marie's income, as the chancellor clearly designated it as Shelton's debt.
¶ 8. Considering the numbers, we find that the chancellor did not err in fixing Shelton's adjusted gross income for purposes of determining child support at $54,000 per year. Contrary to Shelton's assertion, the court spoke quite clearly about how it arrived at the $54,000 number; the court considered Shelton's income, and finding that the statutory guidelines would have produced a higher number than the court felt was appropriate, it lessened Shelton's gross adjusted income to produce a number that reflected the nature of Shelton's work, conceding that Shelton's trend to increased income was affected by the number of hours worked.

II. DID THE COURT ERR IN AWARDING PERIODIC ALIMONY TO LISA MARIE BURGE?
¶ 9. Shelton argues that the court erred in awarding periodic alimony of $400 per month to Lisa Marie. Shelton assigns as error the fact that the court did not clearly elucidate what facts it found most compelling in the award of alimony. However, the court stated on the record that it had considered the appropriate factors for an award of alimony, and the record indicates that the chancellor was most concerned with the disparity in income between the two parties.
¶ 10. Additionally, Shelton argues that the court erred when it refused to consider the perfidious nature of Lisa Marie's attitudes towards the sanctity of marriage in awarding alimony. Shelton cites as support for this position several cases, all of which were divorces prosecuted under claims of adultery or for other faults. Importantly, Shelton and Lisa Marie pursued divorce through a consent decree, although Shelton had initially sought divorce under claims of adultery and habitual cruel and inhumane treatment. Shelton attempted to elicit proof of Lisa Marie's infidelity at trial; however, the chancellor held such proofs to be improperly brought in a consent proceeding.
¶ 11. In Mississippi, consent proceedings are by definition no-fault proceedings; any evidence showing that the divorce was the fault of either party is to be eschewed. The intent of our no-fault divorce statute is to allow parties to agree to avoid the necessity of publicly putting on proofs of private matters. Perkins v. Perkins, 787 So.2d 1256, 1263 (¶ 21) (Miss. 2001) citing Grier v. Grier, 616 So.2d 337, 340 (Miss.1993). Shelton's attempt to attack the chancellor's decision because the chancellor would not address inappropriate proof regarding fault at trial is unpersuasive; Shelton willingly withdrew his action for divorce based on adultery and habitual cruel and inhuman treatment, for reasons that this Court will not speculate on. Regardless, the fact remains that Shelton, as plaintiff, was fully in control of the nature of his divorce proceedings, and the chancellor can hardly be blamed for enforcing the spirit of consent divorce proceedings.
¶ 12. We find no error in the award of alimony.

III. DID THE COURT ERR IN THE DISTRIBUTION OF MARITAL ASSETS?
¶ 13. Shelton further assigns as error the court's distribution of the marital assets, and in fact what precisely constituted the marital assets. Shelton argues that the chancellor erred in levying him with all of the marital debt that Shelton knew of, despite the court's finding that Shelton was himself irresponsible and even willfully blind and permissive of his wife's intemperate financial excess. Shelton also argues that the chancellor erred in bestowing the entire homestead upon *388 Lisa Marie, while requiring Shelton to pay for the homestead.
¶ 14. Shelton argues that he should not be responsible for the debt Lisa Marie incurred in his absence from the marital home, as he was at sea. However, this ignores the chancellor's on-the-record findings that Shelton knew of the debts Lisa Marie incurred, that marital funds were used to pay them, and that Shelton did nothing to stop Lisa Marie from amassing further debt. Absent any proof to the contrary, it is impossible for this Court to view the court's ruling as an abuse of discretion.

IV. DID THE COURT ERR IN SCHEDULING SHELTON'S VISITATION TIMES?
¶ 15. Shelton assigns as error the court's scheduling of visitation. In its order, the court stated that Shelton was awarded "alternate weekends as minimum visitation, when he is available from the standpoint of his work." The court also required that visitation be unrestricted and conducted by the agreement of the parties outside of the schedule for visitation set by the court. Shelton argues because his work takes him out to sea for long periods of time, the schedule unfairly discriminated against his seeing his children. However, the court's order demonstrates concern for Shelton's work schedule, as it in fact requires that he have unrestricted access to his children, and that additional visitation be available as requested.
¶ 16. Shelton could not accurately forecast his work schedule, and so the court built substantial leeway into its order regarding visitation. Shelton refers this Court to a case wherein one party to a divorce wished to amend the order regarding visitation, and makes his argument relying on this Court's judgment; however, Shelton ignores the fact that this Court's decision in that case was unpublished, and in any case overruled. See Haddon v. Haddon, 806 So.2d 1017, 1020(¶ 14) (Miss.2001). Shelton offers no alternative to the court's schedule, which was designed largely with Shelton's unpredictable absences in mind. Accordingly, we find that the court did not abuse its discretion, and committed no error in scheduling visitation.
¶ 17. For the foregoing reasons, we affirm the judgment of the court below.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., THOMAS, MYERS, AND CHANDLER, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., AND GRIFFIS, J. IRVING, J., CONCURS IN PART AND DISSENTS IN PART JOINED BY LEE, J.
SOUTHWICK, P.J., concurring:
¶ 19. The majority disparages Shelton Burge's argument that some evidence on fault should have been allowed when the chancellor was evaluating whether to award alimony. Fault in causing the breakup of the parties' marriage is among the considerations identified by the Supreme Court before making an award of alimony. This Court has previously found that fault is an appropriate alimony consideration even if a divorce is granted based on irreconcilable differences. Still, a minitrial on fault is to be avoided. I write separately in an effort to promote consistency in our holdings.
¶ 20. The Supreme Court has listed factors that are to be evaluated when establishing *389 the propriety and amount of alimony. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Fault in causing the divorce is one of them. Id. We have found evidence on fault to be relevant even if the divorce is not fault-based.
Allowing evidence of fault in an alimony determination is a factor specifically listed in Armstrong. Id. Nothing in that case indicates such a factor may only be considered in a fault-based divorce. In a very recent case involving a divorce based on irreconcilable differences, the supreme court listed all the Armstrong factors, including fault, as criteria a chancellor should use in determining alimony. Selman v. Selman, 722 So.2d 547 (¶ 31) (Miss.1998). In a divorce based upon irreconcilable differences, there is not any spousal fault that underlies the legal determination to grant a divorce. Still, one spouse more than the other can as a matter of factual reality be more blameworthy in leading the couple to the point of agreeing to the need for a divorce. A total rejection of all such evidence is too broad.
We hold that limited testimony regarding all the Armstrong factors can be introduced even in an uncontested divorce. However, the chancellor should exercise discretion to restrict the evidence such that the determination of relative fault for purposes of awarding alimony does not become the equivalent of trying a contested divorce. The chancellor erred by not allowing Mrs. Driste to put on any evidence that Mr. Driste committed adultery. The fact that both spouses agree to a divorce does not eliminate the consideration of the fault factor in determining alimony.
Driste v. Driste, 738 So.2d 763, 765-66 (Miss.Ct.App.1998). We have repeated this holding in at least one later appeal. Graham v. Graham, 767 So.2d 277, 280 (Miss.Ct.App.2000). I find no Supreme Court authority that discusses the point or refers to Driste or Graham.
¶ 21. The authority used by the majority is a Supreme Court precedent that declared merely that the statute permitting a divorce based on irreconcilable differences was intended "to provide a less painful alternative to the traditional grounds for divorce which required the parties to publicly put on proof of sensitive private matters." Grier v. Grier, 616 So.2d 337, 340 (Miss.1993), cited in Perkins v. Perkins, 787 So.2d 1256, 1263 (Miss.2001). I agree that a divorce based on something other than fault creates a less painful procedure, but such an observation does not cancel the need for some brief review of fault if alimony is being sought by one of the parties.
¶ 22. In this case, I find that the chancellor allowed appropriately minimal review of fault. Mrs. Burge responded that she had not always "been faithful" to her husband during the marriage and had two instances of infidelity. The chancellor upheld an objection to a question that would have identified the paramour. She was also asked whether she had ever threatened to kill her husband, and she admitted that she had but insisted that it had only been a joke.
¶ 23. We have not tried in the past, nor need we now, determine how much exploration of the subject of fault must be allowed, but a party is entitled to have the chancellor obtain a sense of why the marriage failed if alimony is being sought. Here, I find that the husband was allowed to inform the chancellor of some of the wife's contributions towards the problems in the marriage. Had Mrs. Burge desired to reciprocate, which she apparently did not, I find that our prior holdings would have permitted limited exploration of any fault by the husband.
*390 ¶ 24. It is true that the chancellor also stated after hearing this evidence that if the parties wanted to explore "the conduct between the parties," that they should withdraw the motion and stipulation for an irreconcilable differences divorce. So the problem on appeal is not the failure to admit limited evidence of marital fault, but the refusal to consider it. Indeed, the chancellor did not make any findings of fact on the required considerations of alimony. Instead, he stated that the "Supreme Court has blessed us with guidelines and factors" for alimony. Then he said this: "Without delineating my specific consideration, I can assure you [the parties] and the Supreme Court, if they should review this case, that I have read their instructions, and I have acted like the jury acts, consider them and determine the issues before me."
¶ 25. The Supreme Court to which the chancellor was perhaps unsympathetically referring has identified factors necessary to be considered not only as to alimony but also regarding child custody and equitable distribution of property. The Court has recently begun to hold that failure to consider all factors on the record regarding custody and property distribution is reversible error. Sandlin v. Sandlin, 699 So.2d 1198, 1204 (Miss.1997) (equitable distribution: "the failure to make findings of fact and conclusions of law [is] manifest error requiring reversal on remand"); Powell v. Ayars, 792 So.2d 240, 244(¶ 8) (Miss.2001) (must make findings on the record as to each child custody factor). However, the Court has held "if the chancellor has failed to delineate all the [alimony] factors on the record, where all the facts are available to us, we are not required to remand the case to the trial court." Voda v. Voda, 731 So.2d 1152, 1155 (Miss.1999).
¶ 26. We need not decide whether the Supreme Court intends to make firm appellate rules in which most of the decisions by chancellors in domestic cases must have detailed findings on the record but alimony decisions do not. Certainly the better practice is to follow the Supreme Court's directions in good faith and attempt to set out the reasoning for the various decisions that are reached. The trial and appellate courts both have their institutional roles to play. Each court needs to consider the obligations of the other level court with sensitivity, not hostility.
¶ 27. Though this chancellor refused to set out findings as to alimony, I find under Voda that the basis for his decision is sufficiently supportable on the record as not to require a reversal for that reason. Though the chancellor rejected the relevance of faultthe Supreme Court in time may also disagree with our Driste decision, but it has not yetI find that the marital infidelity and the possible threats by the wife were not enough to have prevented alimony from being awarded.
¶ 28. I concur in affirming the decision.
McMILLIN, C.J., AND GRIFFIS, J., JOIN THIS SEPARATE WRITTEN OPINION.
IRVING, J., concurring in part, dissenting in part:
¶ 29. I agree with the majority's resolution of all issues except the second issue, the award of alimony. Also, I find myself in total agreement with the concurring opinion by Judge Southwick, except as to its conclusion.
¶ 30. I would reverse and remand on the issue of alimony because I think the chancellor, in deciding the alimony issue, erroneously refused to consider evidence of Lisa Marie's conduct as a potential factor in the dissolution of the marriage. It *391 is true that the chancellor was made aware of her conduct, but my reading of what the chancellor said leaves me convinced that he did not consider this evidence in deciding the alimony issue. In my opinion, a spouse who engages in un-condoned acts of infidelity, which play a substantial role in the dissolution of the marriage, should not be rewarded by an award of alimony unless he/she was driven to such conduct by acts, equally reprehensible, committed by the other spouse.
LEE, J., JOINS THIS SEPARATE OPINION.