658 So.2d 866 (1995)
Judith Carole Francis DRAPER
v.
Robert Adam DRAPER.
No. 94-CA-00317-SCT.
Supreme Court of Mississippi.
July 20, 1995.
*867 Terrell Stubbs, Mendenhall, for appellant.
Chatwin M. Jackson, Jackson & Fenwick, Kosciusko, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:
On June 25, 1993, Robert and Judith Draper consented to a divorce on the grounds of irreconcilable differences and agreed that Judith would have custody of the children and that she would waive any claim for alimony. The parties stipulated to a partial property settlement, and Robert agreed to maintain medical insurance on the children. The unresolved issues including child support, child visitation schedules, equitable liens, attorneys' fees, and ownership of certain personal property items were tried in the Attala County Chancery Court on June 28, 1993, by consent of the parties.
Robert and Judith were legally married on November 6, 1976 in Simpson County, Mississippi and lived together as man and wife until their final separation in Kosciusko, Mississippi in June of 1992. They had three children whose names and dates of birth were as follows: William Adams Draper, July 24, 1979; Francis Elizabeth Draper, August 1, 1983, and, Emily Melissa Draper, November 8, 1990.
The Drapers purchased their five bedroom home in 1987 in Kosciusko, Mississippi for $25,000 down and a $135,000 note and mortgage. Approximately one year after purchasing the house, they deeded the house to Robert's mother, Mavis Draper. She satisfied the original mortgage and subsequently assumed another mortgage in order to cover her son's $167,000 debt to Merchants & Farmers Bank for his defunct business, "Class and Country." As a result of the deed transfer and new mortgage, Robert was no longer legally liable on the $167,000 note, and his mother became the legal owner of the marital home. Robert continued to reside in the marital home rent-free after his separation from Judith.
Robert's insolvent business, Class and Country, had $36,000 outstanding in accounts receivables. Based on the collection history, Robert estimated that he would only accumulate 20% of this value. The only other remaining assets of the company were a few clothes racks and some unfinished rattan furniture in various stages of completion. Robert estimated the value of these assets to be about $3,500. Although there was evidence that there were 750 pieces of rattan furniture stored in a warehouse, and that Robert had sold just twelve of those pieces in 1992 for $2,288, Robert maintained that the furniture was worth very little absent a substantial amount of labor, paint, and webbing since it was water damaged. He maintained that he did not have the funds to repair the furniture for resale.
Robert also co-ventured a business called "Coast to Coast  Home and Auto." He owned one-third of the shares from 1989 until May of 1993 when he sold his interest. His total earnings from the business amounted to $16,000.
At the time of trial, Robert had recently obtained a job as a traveling sales representative for Hill Manufacturing Co. ("HMC"). His estimated earnings were $2500 per month. His boss estimated that Robert could potentially earn $30,000 to $35,000 per year after his first year. He estimated Robert's work expenses to be $3,000 to $5,000 per year.
Robert testified that his work expenses including automobile expenses, motels, and meals would be approximately $1200 per month. He already paid $283 per month for *868 health insurance for his family as part of the divorce settlement. It cost him $200 each month to store his unfinished rattan furniture. His total estimated food expenses were $451.50 per month. He estimated his total monthly expenses to be $1599.89.
Robert owned $3,000 in Kosciusko Country Club stock, and $1,300 in First Mississippi stock. His liabilities included debts to Eastward Shoe Co., $1200; Russell Corporation, $1725; Kemp Hodges, $635, and United Warehouse, $4500. Robert also spent $10,000 from his son Will's trust account and $10,000 from his daughter Fran's trust account in a futile attempt to save some of his real estate ventures in Jackson, Mississippi.
Mavis Draper permitted Robert to live rent-free in the former marital home which she now legally owned. She paid $1400 a month on the house note. Mavis made the following loans to her son: $157,000 to satisfy the original note on the marital home; $15,000 to buy the rattan furniture; $10,000 to repay another note at Merchant & Farmers Bank; $17,000 to pay back taxes and, approximately $4800 to meet his living expenses last year. She confirmed Robert's testimony that she had assumed the $167,000 Class and Country debt securing it with another mortgage on the former marital home. She testified that Robert never had anything invested in any of the businesses which ultimately became insolvent because she had regularly paid the monthly notes from the businesses even before she assumed the final debt left by bankruptcy. She said that he has failed to repay her anything on the money she loaned him. Robert testified that he felt a moral obligation to repay his mother for the loans.
Judith Draper moved to Mendenhall, Mississippi with the three children after the separation. She transferred her 21% interest in five tracts of land to her father, and another .86 acre tract to her sister immediately prior to the divorce in fear that Robert would file for bankruptcy. She estimated that she and the three children needed $2723.75 each month for living expenses. Her income from teaching was $1,430 per month. Her parents provided the remaining $1,300 per month needed to meet her necessary expenses. She said that she needed approximately $1,200 a month to support the three children aged 13, 9, and 2 at the time of trial. She rented a house from her father for $400 a month.
After hearing the evidence, the trial court entered an opinion on August 9, 1993 ordering Robert to pay $350 per month in child support. The court also ordered Robert to repay the $20,000 misappropriated from the trust funds of the children in violation of the Mississippi Uniform Gifts to Minors Act. The court entered a final judgment of divorce to this effect on November 23, 1993.

THE CHANCELLOR ERRED IN FAILING TO AWARD A SUFFICIENT AMOUNT OF CHILD SUPPORT FOR THE PARTIES' THREE CHILDREN
In Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 153 (1955), this Court established the following nine guiding factors to aid in weighing the evidence to determine the proper award of child support:
(1) the health of the husband and his earning capacity;
(2) the health of the wife and her earning capacity;
(3) the entire sources of income of both parties;
(4) the reasonable needs of the wife;
(5) the reasonable needs of the child;
(6) the necessary living expenses of the husband;
(7) the estimated amount of income taxes the respective parties must pay on their incomes;
(8) the fact that the wife has the free use of the home, furnishings and automobile, and
(9) such other facts and circumstances bearing on the subject that might be shown by the evidence.
The chancellor is charged with weighing the evidence, and this Court will not reverse his determination absent manifest error or an abuse of discretion. Gillespie v. Gillespie, 594 So.2d 620, 622 (Miss. 1992). Robert relies heavily on this standard of review for his argument that the chancellor's *869 award of $350 a month in child support should not be disturbed on appeal. Judith argues that the child support award of $350 per month was manifestly erroneous because the chancellor failed to consider the statutory guidelines pursuant to Miss. Code Ann. § 43-19-103.
The statutory guidelines are used in conjunction with the nine Brabham factors to establish the appropriate award of child support. The statutory guidelines are a rebuttable presumption in the award or modification of child support. Miss. Code Ann. § 43-19-101(1) (1993). They apply unless there is a "written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103." Miss. Code Ann. § 43-19-101(2). Since these guidelines may ultimately be rebutted in the chancellor's findings of fact, they do not control per se the amount of an award of child support. McEachern v. McEachern, 605 So.2d 809, 814 (Miss. 1992).
The opinion issued by the trial court neither alludes to or concludes anything specifically contrary to the statutory guidelines so as to constructively rebut the presumption of the guidelines. Dufour v. Dufour, 631 So.2d 192, 194 (Miss. 1994). Therefore, we must analyze the facts of this case to determine whether $350 per month for the support of the three children was consistent with the amount suggested by Miss. Code Ann. § 43-19-101 or whether the chancellor was manifestly erroneous in awarding this amount.
The guidelines first require the fact finder to "[d]etermine gross income from all potential sources that may reasonably be expected to be available to the absent parent... ." Miss. Code Ann. § 43-19-101(3)(a) (1993). All of the testimony indicated that Robert's salary, which was based entirely on commissions, fell within the approximate range of $30,000 to $35,000 per year. Robert's other sources of income included the $36,000 in accounts receivables from his bankrupt business and the potential income from the 750 pieces of wicker furniture stocked in a warehouse. The collection of the accounts receivable, however, was proven to be very sporadic with little hope that more than 20% of the accounts would be paid. Furthermore, there was testimony that the stored furniture was unfinished, and that it would require a substantial investment, which Robert did not have, in order to get the furniture in resale condition. These other sources of income were apparently not a very reliable gauge of future income as there was some question as to whether they would ever fully materialize. While these sources of income were an unreliable gauge in determining Robert's future income, the evidence demonstrated that these sources would produce some income in the future since Robert testified that the wicker furniture alone in its unfinished state was worth at least $3500.
The only other potential source of income for Robert was the $3,000 worth of Kosciusko Country Club stock and $1,300 worth of First Mississippi stock which he retained. Judith claimed that the chancellor failed to account for the $16,000 in assets Robert received when he sold his interest in Coast to Coast. However, the chancellor properly excluded this amount from the equation because the money was used to purchase a car which Robert needed in order to fulfill his obligations as a traveling salesman.
The small amount of additional income above and beyond his HMC salary was somewhat offset by the approximately $5000 in expenses which Robert incurred as part of his job with HMC. Robert's boss, who formerly worked the same territory in addition to another section of equal size, testified that work expenses ranged from $3,000 to $5,000 per year. Robert's estimates were as high as $15,000 a year, an amount which constituted nearly half of his future income. Consistent with Judith's assertion in her brief that Robert overstated his work related expenses at trial, Robert's estimate of expenses appeared to be an unreasonable expectation. His boss's figure was more likely the best estimate of expenses since he had first hand experience with this job unlike Robert who had worked only a few weeks at the time of trial.
When viewing all of the evidence, it is apparent that the HMC job was Robert's only significant and reliable source of income. *870 The best estimate of Robert's future income was the upper range of his potential total earnings at HMC. Although there was some evidence that he could earn as much as $40,000 a year in this job, the figure of $35,000 per year as the upper range of his income potential is better supported by the evidence. This figure is consistent with the chancellor's findings.
The guidelines next require the fact finder to subtract certain expenses from the gross income figure and divide it by twelve to determine the amount of monthly adjusted gross income. Miss. Code Ann. § 43-19-101(3)(b)-(e) (1993). A salary of $35,000 a year yields a monthly salary of $2916.67. Subtracting 12% of this amount for federal income tax, 7.65% for social security, and 3% for state income tax as required by the statutory guidelines yields a monthly income of about $2,250. There is no indication that Robert had to contribute to mandatory retirement funds, and Robert had no other child support obligations beyond his three children living with Judith.
Finally, with three minor children to support, the guidelines suggest that Robert be ordered to pay 22% of his adjusted gross income, $495 a month, in child support. See Miss. Code Ann. § 43-19-101(1). Because the chancellor failed to make a specific finding on the record that the application of the guidelines would be unjust or inappropriate, we find that the $350 a month award for child support was manifestly erroneous.
Based on the record before this Court, the Brabham factors suggest no other reason the child support award should be set nearly $150 a month below the amount suggested by the statutory guidelines. Instead, the facts are more supportive of an award in an amount greater than suggested by the statutory guidelines. There was no evidence that any member of the family suffered health problems. Robert lived rent-free in the former marital home owned by Robert's mother, whereas Judith provided evidence at trial that she paid $400 a month to live with the three children in a house owned by her father. Judith brought home only about $1,480 a month as a teacher, and her parents continued to contribute $1300 a month so that she and the three children could make ends meet. Robert's total liabilities were grossly overstated at trial because he was not legally liable for the $167,000 debt to Merchants & Farmers Bank which he originally claimed on his balance sheet. Robert, in fact, only maintained $8,000 in total liabilities at the time of trial. When the $167,000 debt is properly subtracted from his balance sheet submitted at trial, there remains a positive net worth of approximately $46,000. This is contrary to the chancellor's finding that he had a negative net worth. There was no other evidence that his income would be depleted by pre-existing debts since his mother had apparently assumed legal responsibility for the huge amount of debt incurred by his failed business ventures. In light of all the circumstances of this case, this case is reversed and remanded for a new hearing on the issue of child support.

THE CHANCELLOR ERRED IN FAILING TO CHARGE ROBERT WITH INTEREST AND PENALTIES ON FUNDS HE WAS REQUIRED TO REPAY WHICH HE HAD MISAPPROPRIATED FROM ACCOUNTS HELD IN THE NAME OF THE PARTIES' TWO OLDEST CHILDREN UNDER THE MISSISSIPPI UNIFORM GIFTS TO MINORS LAW
Robert admitted spending $20,000 of his children's trust account in a futile attempt to save some of his business ventures. The chancellor ordered Robert to reimburse the children's funds at a rate of $2,000 per calendar year until the sums were paid. Judith argues that Robert should be required to pay interest and penalties for the misappropriation of these funds. While interest should have been awarded in the case at hand, we find no authority in Appellant's brief supporting an award of a penalty beyond an award of interest.
Miss. Code Ann. § 75-17-3 provides that the judge hearing a complaint shall make an award of interest on judgments or decrees at a per annum rate accrued from a date determined to be fair by the judge hearing the complaint, except that it may not accrue prior to the filing of the complaint. *871 The trial judge assuredly abused his discretion by not ordering Robert to pay interest on the $20,000 he misappropriated. However, the issue remains as to the specific date from which the interest should accrue.
In Estate of Van Ryan v. McMurtray, 505 So.2d 1015, 1019 (Miss. 1987), this Court concluded that it had a duty to award prejudgment interest at the statutory rate from the date of the taking where a husband misappropriated money for his own personal use from a trust fund set up for the benefit of his wife. See Russell v. Russell, 164 Miss. 335, 144 So. 542, 544 (1932). The money in the case at hand was held in an account listed under the children's names, and Robert Draper was named custodian of these funds. Robert was a fiduciary charged with using the funds for the benefit of the children. We find that the case at hand is analogous to McMurtray requiring an award of interest from the date on which each withdrawal was made. There was certainly no dispute that Robert took the money, or as to the amount of money Robert misappropriated from these accounts. See Glantz Contracting Co. v. General Electric Co., 379 So.2d 912, 918 (Miss. 1980) (concluding that if amount of money due is liquidated with no legitimate dispute that money is owed, complainant is entitled to award of interest from date money was due). Accordingly, the trial court improperly failed to award the children prejudgment interest on these misappropriated funds calculated from the date of each separate taking. The chancellor shall award prejudgment interest on remand.
REVERSED AND REMANDED.
HAWKINS, C.J., PRATHER, P.J., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.