742 So.2d 781 (1999)
Michael Glenn KEOUGH, Appellant,
v.
Joann (Wilkerson) KEOUGH, Appellee.
No. 97-CA-01244-COA.
Court of Appeals of Mississippi.
June 29, 1999.
Wallace C. Anderson, Olive Branch, Attorney for Appellant.
Joann W. Keough, Pro Se, Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. Michael G. Keough appeals the judgment of the DeSoto County Chancery Court ordering his incarceration in the custody of the sheriff of DeSoto County for willful and obstinate contempt for his failure to pay child support until he has purged himself of said contempt. From the chancery court's judgment, Michael has raised three assignments of error for review; however, addressing each of his respective issues is determinative on the single issue of whether the chancellor abused his discretion in holding Michael in willful and obstinate contempt and incarcerating him until he has purged himself of the said contempt and denying Michael's motion for affirmative relief:

I. WHETHER THE CHANCELLOR ERRED AND ABUSED HIS DISCRETION IN HOLDING THE APPELLANT IN WILLFUL AND OBSTINATE CONTEMPT OF COURT AND ORDERING INCARCERATION AS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Finding no error, we affirm.

FACTS
¶ 2. Michael and Joann Keough were married on May 1, 1978, in Shelby County, *782 Tennessee. Two children were born of this marriage: Jody Glenn Keough, born September 29, 1980, and Krista Michelle Keough, born December 20, 1985. In the latter part of their marriage certain irreconcilable differences arose resulting in a divorce granted on July 1, 1996. From that decree, Joann was granted the exclusive use and occupancy of the parties's mobile home residence and furnishings with the provision that each shall received one-half (½) of the net proceeds of the sale of the residence and real property should the event take place. The ad valorem taxes were agreed to be split equally as long as wife occupied the property. Certain catering business equipment was obtained during the course of their marriage. The decree provided that Michael would receive the exclusive use and possession of the equipment with a hold harmless release of Joann from any indebtedness on the business property. The decree further provided that in the event that the catering truck or its attached equipment was sold, each would be entitled to one-half (½) of the net proceeds. Michael was granted reasonable visitation as agreed between the parties with ordered payments of child support to Joann in the amount of $400 per month for the two children.
¶ 3. Post-divorce relations between the parties deteriorated to the point that Joann filed a motion for temporary restraining order against Michael on March 21, 1997, alleging that over the course of the previous two weeks Michael had threatened her with bodily harm, assaulted her, and harassed her by telephone and through stalking. Joann further asserted that Michael had entered upon the property exclusively granted to her in the July of 1996 divorce decree and harassed persons renting the mobile home. A criminal complaint was also filed by Joann for the alleged assault. An order for temporary restraint was entered on March 21, 1997.
¶ 4. On May 28, 1997, Joann filed a complaint to cite Michael for contempt. Her complaint alleged that Michael was in the arrears of the court ordered child support, his portion of incurred medical expenses and ad valorem taxes. On June 20, 1997, Michael responded with a complaint for modification of the final decree, complaint to set aside deed, and for other relief. His complaint asserted material changes in circumstances as the reason for his failure to pay child support and other monies ordered in the July 1996 decree. As a justifiable material change in circumstances since the July 1996 decree, Michael asserted a diminished income and an inability to obtain and maintain gainful employment due to an aneurysm he suffered in August of 1996.

ANALYSIS

I.

WHETHER THE CHANCELLOR ERRED AND ABUSED HIS DISCRETION IN HOLDING THE APPELLANT IN WILLFUL AND OBSTINATE CONTEMPT OF COURT AND ORDERING INCARCERATION AS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 5. Mississippi's chancellors are charged with weighing the evidence presented, and we will not disturb a chancellor's determination when supported by findings of fact absent manifest error or an abuse of discretion. Turpin v. Turpin, 699 So.2d 560 (¶ 15) (Miss.1997) (citing Draper v. Draper, 627 So.2d 302, 304, 305 (Miss.1993)). This Court respects those findings of fact which are supported by substantial credible evidence, particularly in areas of domestic relations. Steen v. Steen, 641 So.2d 1167, 1169 (Miss.1994). Broad discretion is afforded a chancellor's determination on matters involving child support modification under our substantial evidence/manifest error rule. McEwen v. McEwen, 631 So.2d 821, 823 (Miss.1994).
¶ 6. Michael argues that the chancellor erred and abused his discretion in *783 finding him in willful and obstinate contempt of court and his subsequent incarceration for failing to pay child support in the amount of $400 per month, for a total arrearage of $5,600 beginning July 1996 thru August 1997. Michael argues he was justifiably excused from paying child support due to an aneurysm he suffered in August of 1996 shortly after the child support payments were to begin. Michael maintains that as a result of his aneurysm he has been unable to obtain gainful employment, aside from sporadic odd jobs, and has therefore experienced a substantial reduction in income constituting a material change in circumstances. Michael further argues that the chancellor erred and abused his discretion in failing to accord him monetary credit for transfers of real property to Joann and proceeds from the sale of equipment from their catering business.
¶ 7. In support of his argument, Michael has cited several cases in general form without any specific reference to the case's holdings or propositions from which he is arguing. A careful reading of each of his cited cases has been conducted by this Court. We have drawn any factually similar circumstances or issues of law which can be argued in the present case. Hooker v. Hooker, 205 So.2d 276, 278 (Miss. 1967) (holding that it was improper to commit ex-husband to jail for contempt until he has purged himself of arrears of alimony and child support where, subsequently to contempt decree ex-husband had suffered financial reverses rendering him wholly unable and incapable of abiding by and complying with the contempt decree); Jones v. Hargrove, 516 So.2d 1354, 1357-58 (Miss.1987) (holding that husband should not have been incarcerated for child support arrearage where failure to pay is due to an inability to comply); Draper v. Draper, 658 So.2d 866, 869 (Miss.1995) (holding that a child support award below the statutory guideline as manifest error absent specific findings on the record that the application of the guidelines would be unjust or inappropriate under the general premise of the substantial evidence/manifest error rule); McEwen v. McEwen, 631 So.2d 821, 823-24 (Miss.1994) (holding that former husband's heart attack, with 40% reduction in income, was substantial change of circumstances warranting reduction of his child support payment despite chancellor's finding to the contrary that some decrease in income had occurred but not a material or substantial change in circumstances such as to warrant a reduction in child support payments).
¶ 8. Having made a detailed review of the arguments presented on appeal and the case law cited therein, we note several pivotal distinctions between the facts present in the case before us today and the cases from which Michael has advanced his arguments. While each of his cited cases clearly reiterates the substantial evidence/ manifest error rule from which our chancellors must abide in reaching decisions on the matters presented before their court, the factual distinctions between the present case and the cases Michael has cited as support nevertheless remain.
¶ 9. First, we note that the absence of specific findings of fact, with respect to any material or substantial changes in circumstances, made by the chancellors in the cases cited in Michael's brief played a determinative role in the supreme court's affirming or reversing each respective case. Jones, 516 So.2d at 1356; Draper, 658 So.2d at 869; McEwen, 631 So.2d at 823. Secondly, in each of the cases cited where the husband was to be held in contempt until he had purged himself of said contempt, each was found to have lacked the ability to comply financially with the contempt decree while sitting idle in jail and therefore their respective incarcerations was deemed improper. Hooker, 205 So.2d at 278; Jones, 516 So.2d at 1357-58.
¶ 10. Distinctions in the above mentioned cases from the instant case are readily apparent and were sufficiently addressed in the chancellor's findings of fact. The *784 chancellor's opinion sets forth adequate justification in his findings. In support of his claim that he was physically and medically unable to obtain gainful employment as a result of the August 1996 aneurysm and the alleged resulting inability to pay his required child support, Michael presented medical reports from his treating physicians indicating the same at trial. Both the medical reports of Dr. Clarence B. Watridge on October 8, 1996, and Dr. Steven I. Himmelstein on October 10, 1996, states that Michael was unable to return to work as of October 1996, yet they speak nothing of his work potential in the months following. Dr. Watridge's report specifically restricted Michael's return to "heavy manual labor" and encouraged Michael to progress in activities as tolerated. Seven days prior to trial, Michael obtained an additional medical statement from Dr. Richard Newhouse, a staff physician with the Veteran's Administration Medical Center in Memphis, Tennessee. Dr. Newhouse's opined that Michael was unable to work at the present time and that his medical status would not change in the foreseeable future.
¶ 11. These medical statements, however, were not the only proof presented at trial concerning Michael's medical condition and his ability to engage in activities requiring at least some modest physical exertion. Evidence in direct contradiction of Michael's assertions that he is medically unable to engage in any type of gainful employment was presented. In the same month in which Drs. Watridge and Himmelstein made their medical statements limiting Michael's activities, Michael was physically able to operate his Harley Davison motorcycle and travel from DeSoto County, Mississippi to Daytona Beach, Florida, a distance of approximately 1400 miles round trip, for a motorcycle enthusiasts' convention. This evidence is reflected in the chancellor's findings. Further evidence was presented through the testimony of a former female acquaintance. She testified that during intermittent periods between July 1996 and November 1996 when Michael stayed with her, she observed no physical infirmities which she believed limited his activities. The evidence presented at trial also showed that Michael had at times engaged in minor car repairs, oil changes and general office work for a local used car dealership. Michael also engaged in minor yard work and landscaping for Joann albeit at his own pace and as his tolerance allowed.
¶ 12. In regard to his overall financial resources, additional evidence produced at trial showed that despite Michael's financial ability to keep current the bank notes on his Harley Davison motorcycle by raising funds through the sale of various items of equipment previously used in his catering business, none of the sale proceeds of the said equipment went to payment of the child support arrearage. Despite Michael's testimony that he had paid some monies to Joann, he could not produce any documentation supporting said testimony. Further evidence presented at trial demonstrates that Michael did have sufficient access to funds from which to pay the child support arrearage through the sale or transfer of his interest in the couples remaining real and personal property. Testimony reveals that the various tools and equipment are valued at between fifty to sixty thousand dollars.
¶ 13. This testimony and evidence is reflected in the chancellor's findings of fact and as justification for his decision holding Michael in willful and obstinate contempt. The testimony and evidence presented before the court supports said decision. The chancellor's discretion allows for discounting some testimony and evidence while according greater weight to other testimonies and evidence. We are required to accord broad discretion to our chancellors in domestic relations cases and we will not reverse a chancellor's decision when the factual findings are supported by substantial evidence. Brooks v. Brooks, 652 So.2d 1113, 1124 (Miss.1995). We cannot say that the chancellor's decision was manifestly *785 wrong or clearly erroneous, nor can we say that an incorrect legal standard was applied given the testimony and evidence presented. This assignment of error is without merit.
¶ 14. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.