MYERS, P.J., for the Court.
¶ 1. Edward Bruce Kelley, in his initial appeal, seeks review of the order of the Harrison County Chancery Court denying his motion for modification of his child support obligations. While awaiting a result in his initial appeal, Kelley was found in contempt and ordered to pay attorney’s fees in the chancery court. He now seeks review of the chancellor’s decision finding him in contempt and ordering him to pay attorney’s fees in the accompanying consolidated appeal. Kelley argues that he should have been given credit for child support payments made prior to the filing of the paternity complaint, and that his reduction in income should have provided for the reduction in the ordered child support payments. Further, Kelley argues that the chancellor abused his discretion in refusing to recuse himself. Finding no error, we affirm the order of the chancery court and find that recusal was not required in this case.
STATEMENT OF FACTS AND
PROCEDURAL HISTORY
¶ 2. Edward Bruce Kelley and Julie Ann Day are the parents of a minor child conceived out of wedlock. When the child was approximately two and one-half years of age, Day filed a complaint seeking to establish paternity and to determine child custody and child support. Before this time, Kelley and Day had been managing custody and support through a mutual agreement; however, this agreement was never approved by a court. On July 20, 2004, the chancery court ordered temporary child support payments; however, Kelley failed to make any payments. Thereafter, Day moved to have Kelley found in contempt for non-payment of his child support obligations, and sought an award of attorney’s fees. A hearing was held on the matters and the chancellor found Kelley in contempt of the July 20, 2004 temporary child support order. A new order was entered on February 18, 2005, adjudicating paternity, ordering support and continuing the finding of contempt. After the February 2005 order was entered, Kelley satisfied his child support arrearage until April of 2005. However, he appealed the judgment to this Court. While awaiting adjudication of his appeal, in April of 2005, Kelley again discontinued paying his child support obligations and filed a motion in the chancery court for downward modification. Day filed another complaint for contempt and a hearing was held on the second contempt complaint on March 10, 2006. The chancellor again held Kelley in contempt, and from this ruling, Kelley additionally appeals. The two appeals have been consolidated and Kelley seeks review of the orders of the chancery court.
STANDARD OF REVIEW
¶3. Our standard of review in domestic relations cases is limited by the *753 substantial evidence/manifest error rule. This Court may reverse a chancellor’s findings of fact only when there is no substantial credible evidence in the record to justify his findings. Our scope of review in domestic relations matters is limited in that this Court will not disturb a chancellor’s findings unless they are manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard. Tynes v. Tynes, 860 So.2d 325, 327(¶ 5) (Miss.Ct.App.2003) (citing Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002)).
I. WHETHER THE COURT COMMITTED MANIFEST ERROR IN MODIFYING THE AGREEMENT BETWEEN KELLEY AND DAY CONCERNING CHILD SUPPORT OF THE MINOR CHILD AND AWARDING RETROACTIVE CHILD SUPPORT WITHOUT DUE PROCESS
¶ 4. In formulating the temporary order for child support, the chancellor retroactively awarded support from April 27, 2003, which was one year prior to the date that Day filed the paternity and child support complaint against Kelley. Kelley argues that the chancellor erred in backdating the order of child support to the year preceding Day’s filing of the paternity and support action. Kelley points us to the fact that he and Day had contractually agreed upon a child support arrangement prior to Day’s filing the complaint in the chancery court, and argues that, because of the agreement between the parties, the chancellor had no authority to order child support payments for the period while the parties’ agreement was in force. Day asserts that the chancellor was well within his discretion in awarding child support for the year before she filed her paternity action seeking child support. Day admits that she and Kelley had an agreement between them regarding child support during the year period of time before she filed the paternity action, but argues that the agreement was still modifiable and not binding, as it was not approved by the court.
¶ 5. Mississippi statutory law speaks directly to whether a contract between a mother and an alleged father, regarding child support, may override a judicial order regarding the matter. The Uniform Law on Paternity found in Mississippi Code Annotated section 93-9-49 (Rev.2004) provides that “[a]n agreement of settlement with the alleged father is binding only when approved by the court.” Therefore, we hold that a contract between the mother and an alleged father of an illegitimate child cannot, without judicial scrutiny and approval, preclude future paternity proceedings for purposes of child support.
¶ 6. Moreover, a chancellor has the authority to retroactively award child support one year before the filing of paternity action. The Uniform Law on Paternity not only provides for the prospective child support obligation of a parent, but also for the period before the adjudication of paternity. Miss.Code Ann. § 93-9-11 (Rev. 2004). Section 93-9-11 provides that “[t]he father’s liabilities for past education and necessary support and maintenance and other expenses are limited to a period of one (1) year next preceding the commencement of an action.”
¶ 7. Kelley relies upon this Court’s opinion in Hill v. Brinkley, 840 So.2d 778 (Miss.Ct.App.2003), to argue that a chancellor must first determine the need for child support before awarding support for the year preceding the filing of the paternity action pursuant to Mississippi Code Annotated section 93-9-11. We find that Kelley misconstrues our decision in Hill. *754 In that case, this Court considered a novel argument concerning Mississippi Code Annotated section 93-9-11 and found that the section did not mandatorily require the backdating of an award one year from the filing of the paternity suit. We ultimately held in that case that a chancellor does not commit error when he fails to retroactively award a year’s worth of support from the filing of the complaint. Id. at 780 (¶¶ 3-4).
¶ 8. The prior agreement between Kelley and Day regarding child support was not binding and modifiable, as the contract had not been approved by the chancellor. Thus, the chancellor was within his authority to formulate a child support order, despite the parties’ prior mutual agreement regarding the matter, providing for its effectiveness one year prior to Day’s instituting suit against Kelley for the adjudication of paternity and child support. We find no error in the order of the chancery court and, accordingly, affirm.
II. WHETHER THE COURT COMMITTED MANIFEST ERROR AND ABUSED ITS DISCRETION IN FAILING TO GIVE KELLEY CREDIT FOR CHILD SUPPORT PAID BY HIM PRIOR TO THE FILING OF DAY’S COMPLAINT AND FAILING TO GIVE DUE CONSIDERATION TO KELLEY’S REDUCED INCOME PRIOR TO THE COURT DATE
¶ 9. Kelley argues that the chancellor erred in failing to give him credit for child support paid prior to Day’s filing of the complaint on April 27, 2004. As addressed in the issue preceding, the chancellor ordered child support backdated one year from Day’s filing of the paternity claim. However, in ordering the retroactive child support payments, the chancellor gave credit to Kelley for all payments made during that previous year’s time, as well. The chancellor found that Kelley was entitled to credit in the amount of $2,720 for payments made during the period between April 27, 2003, and the date of the hearing. Kelley argues on appeal that the chancellor should have also given him credit for amounts paid in child support before April 27, 2003.
¶ 10. A chancellor has the authority to give a parent credit for his previous child support contributions made. Department of Human Servs. v. Fillingane, 761 So.2d 869, 872(¶ 13) (Miss.2000) (holding that a chancellor has the discretion to grant an obligor parent a credit for child support payments in the context of a child’s emancipation). But, the authority to credit a parent for sums paid prior to the effective date of the order is limited to the same amount of time the order effectively extends. Our paternity statute provides a chancellor an avenue to reach backwards and order child support payments for up to one year before the filing of a paternity complaint. See Miss.Code Ann. § 93-9-11. However, we find no basis for a chancellor to reach further backward than the previous year before the filiation action began. Thus, we cannot find that the chancellor erred in failing to give Kelley credit for sums of child support paid prior to April 27, 2003, the date to which the child support order extends.
¶ 11. Kelley also asserts that the chancellor erred in failing to lower his child support obligation before the October 2004 hearing on the matter. In his appellate brief, Kelley informs us that during the beginning of this paternity action, he underwent open heart surgery, thereby reducing his income. He argues that the chancellor failed to take his reduction in income into consideration when determining his child support obligation.
*755 ¶ 12. A review of the transcript reveals that this issue of downward modification due to Kelley’s reduction in income was never brought before the chancellor at the October 2004 hearing. Only during the hearing on Kelley’s motion for reconsideration was the chancellor apprised by Kelley’s counsel’s argument that Kelley’s income was. reduced due to his medical condition, but no evidence was introduced at the hearing to support the reduction. In reviewing a chancellor’s decision, “this Court will only consider facts found within the trial record.” McClee v. Simmons, 834 So.2d 61, 64(¶ 12) (Miss.Ct.App.2002). We cannot find that the chancellor erred in an issue that was never properly before the chancellor.
III. WHETHER THE COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FINDING KELLEY IN CONTEMPT OF COURT AND AWARDING ATTORNEY’S FEES WITHOUT DUE PROCESS
¶ 13. During the October 25, 2004, hearing, evidence was presented that showed that Kelley had not paid child support pursuant to the mandates of the temporary order. Based on this evidence, the chancellor then found Kelley in contempt and awarded Day attorney’s fees in the amount of $500. Kelley appeals these decisions of the chancellor, arguing that the chancellor erred in finding him in contempt and in ordering him to pay Day’s attorney’s fees.
¶ 14. “[A] prima facie case of contempt has been established when the party entitled to receive support introduces evidence that the party required to pay the support has failed to do so.” McIntosh v. Dep’t of Human Servs., 886 So.2d 721, 724(¶ 11) (Miss.2004). The undisputed evidence presented a prima facie case of contempt. We cannot find that the chancellor erred in holding Kelley in contempt.
¶ 15. Further, the award of attorney’s fees is statutorily automatic in a paternity action where an order of filiation is entered. Mississippi Code Annotated section 93-9-45 of the Mississippi Uniform Law on Paternity specifically provides that in a case where an order of filiation is entered declaring paternity and ordering child support, “the cost of the legal services of the attorney representing the petitioner ... shall be taxed against the defendant.” However, we note that precedent dictates that the awarded' attorney’s fees in a filiation case must be reasonable. Dobbins v. Coleman, 930 So.2d 1246, 1251(¶ 25) (Miss.2006) (citing R.E. v. C.E. W., 752 So.2d 1019, 1028 (Miss.1999)). While the court awarded $500 in attorney’s fees to Day, the record reflected that Day provided an attorney billing invoice reflecting amassed attorney’s fees in an amount more than $4,000. We find the award of attorney’s fees reasonable and warranted pursuant to Mississippi Code Annotated section 93-9-45. Therefore, we cannot find that the chancellor erred in awarding attorney’s fees to Day.
IV. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR AND ABUSED HIS DISCRETION IN FINDING KELLEY IN CONTEMPT OF COURT AND AWARDING DAY’S ATTORNEY’S FEES FOR THE COLLECTION OF A JUDGMENT
¶ 16. While the initial appeal, predicated upon the chancellor’s April 22, 2005, denial to modify the judgment, was pending in this case, Kelley was terminated from his job, began drawing unemployment benefits and filed for a downward modification of his child support obligations. Upon his filing of the motion for modification of his child support obligations, Kelley unilaterally discontinued *756 paying his child support obligations. Before a decision was made on the modification issue, Day filed a second complaint seeking to have Kelley held in contempt. During the hearing on the matters, Kelley admitted to the discontinuation of child support obligations. Also admitted during the hearing was that during the time period Kelley failed to pay child support, he received cash in excess of $52,692, from the sale of his house, unemployment benefits, and from the withdrawal of funds from an investment account. Based on this evidence, the chancellor held Kelley in willful and contumacious contempt of court once again on March 10, 2006, finding that he had failed to prove he had an inability to pay his child support obligations. The chancellor recognized that generally “under the right circumstances, the filing for modification prior to the complaint for contempt would prevent a finding of contempt,” however he found that “the facts of this particular case ... run afoul of the preceding law.”
¶ 17. This Court has encountered a similar situation to the case sub judice in Keough v. Keough, 742 So.2d 781, 784 (Miss.Ct.App.1999). In Keough, we affirmed a chancellor’s finding of contempt in a case where a father had been physically and medically unable to obtain gainful employment as a result of an aneurysm. Despite the father’s inability to earn a paycheck, during the time period he discontinued child support payments, the father had accumulated sufficient funds through the, sale or transfer of his interest in the couple’s remaining real and personal property. The chancellor held the father in contempt, finding that the father had sufficient access to funds from which to pay the child support. Id. at 782-83(¶ 6).
¶ 18. As in Keough, evidence adduced at the contempt hearing demonstrated that Kelley accumulated a significant amount of cash, from which he could have paid his child support obligations. Kelley’s failure to fulfill his child support obligations during this time is indicative of his willful and contumacious contempt of the chancery court order. “A chancellor has substantial discretion in deciding whether a party is in contempt.” R.K v. J.K, 946 So.2d 764, 777(¶ 39) (Miss.2007). “Contempt is an issue of fact to be decided on a ease-by-case basis.” Id. “A parent obligated to pay child support cannot reduce child support payments without a court order, and when such event happens the parent who deviated from his obligation must pay accrued child support.” Id. at 780(¶ 50) (citing Williams v. Rembert, 654 So.2d 26, 29 (Miss.1995)). We find that the facts under which the chancellor held Kelley in contempt are sufficient to support his decision on appeal. Therefore, we find no error in the decision of the chancellor.
¶ 19. We turn to Kelley’s argument that the chancellor erred in assessing him with attorney’s fees. A chancellor may award attorney’s fees as the result of a contempt action, even where the contempt stems from a domestic relations action. Creel v. Cornacchione, 831 So.2d 1179, 1184(¶ 18) (Miss.Ct.App.2002). “The award of attorney’s fees is largely within the sound discretion of the chancellor.” Id. The chancellor ruled in favor of Day and Day provided evidence of amounts expended in attorney’s fees; therefore, we cannot say that the chancellor abused his discretion in awarding attorney’s fees in this matter.
V. WHETHER THE COURT COMMITTED MANIFEST ERROR AND ABUSED ITS DISCRETION IN FAILING TO MODIFY KELLEY’S CHILD SUPPORT PAYMENTS IN LINE WITH HIS INCOME
¶ 20. Having found Kelley in contempt on March 10, 2006, for failure to pay his *757 child support obligation, the chancery court then addressed whether, under these circumstances, it could grant a modification of support. The chancellor found that because Kelley requested modification with unclean hands, he could not receive a modification of his child support obligations. Kelley argues that the chancellor erred in denying his motion for modification because he failed to consider Kelley’s lack of earned income. Kelley argues that downward modification was warranted because, since the order, he suffered a heart attack and subsequently became unemployed and financially constrained, receiving only limited income in the form of Social Security disability payments.
¶ 21. “[A] parent seeking a change in child support payments must file a motion for modification with the proper court and show a material change in the circumstances of one or more of the interested parties.” R.K., 946 So.2d at 780(¶ 50) (citing Sumrall v. Munguia, 757 So.2d 279, 282 (Miss.2000)). However, the clean hands doctrine prevents a parent from receiving a modification of child support order when that parent is guilty of willful contempt of the order mandating the support. Bailey v. Bailey, 724 So.2d 335, 337(¶ 6) (Miss.1998) (citing Calcote v. Calcote, 583 So.2d 197, 199-200 (Miss.1991)). In this case, the chancellor found Kelley in willful contempt of the order to pay his child support obligations. The court recognized that while Kelley became unemployed, he received funds in the interim that would have allowed him to pay the ordered child support. During the hearing on the matter, Kelley admitted that during the time period he failed to pay child support, he received cash in excess of $52,692, compiled from the sale of his house, unemployment benefits, and from the withdrawal of funds from his investment account. We do not find error in the chancellor’s holding that Kelley had unclean hands, thus barring him from receiving the requested modification of his child support obligations.
¶22. We additionally note that the chancellor did effectively reduce Kelley’s child support obligations, although the reduction was not treated as a “modification” of the order. The chancellor credited Kelley with the amount that the child receives in Social Security benefits, pursuant to the precedent of Mooneyham v. Mooneyham, 420 So.2d 1072 (Miss.1982). After this reduction, Kelley was ordered to pay 17% of his adjusted gross income he receives in his own Social Security benefits for the child support. We find that the chancellor’s determination of this issue is not manifestly wrong or an abuse of discretion. Therefore, we find this issue is without merit.
VI. WHETHER THE COURT ABUSED ITS DISCRETION IN FAILING TO RECUSE ITSELF FROM THIS CASE WHEN REQUESTED
¶ 23. Kelley submitted a motion for the chancellor to recuse himself, which was denied. In his motion, in support of his position that recusal was warranted, Kelley cites to the judge’s action in ordering Kelley out of the courtroom, the judge’s statements made during a hearing, and the judge’s various rulings that are a part of this appeal today.
¶24. It is presumed that a judge who is sworn to administer justice is qualified, impartial and unbiased. When the judge is not disqualified under constitutional or statutory provisions, the judge has the discretion to decide the propriety of his sitting and that decision is subject to review only in a case of manifest abuse of discretion. Steed v. State, 752 So.2d 1056, 1061(¶ 11) (Miss.Ct.App.1999).
*758 ¶ 25. Our review of the hearing transcripts reveals no impropriety in the actions, the statements, or the rulings made by the judge during this case. None of the actions of the chancellor of which Kelley complains demonstrates any prejudice on the part of the chancellor toward Kelley. Therefore, we find no abuse of discretion in the chancellor’s refusal to recuse himself.
¶ 26. THE JUDGMENTS OF THE CHANCERY COURT OF HARRISON COUNTY ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J. AND BARNES, J.