IRVING, P. J.,
FOR THE COURT:
¶ 1. Sarah Smith[1] appeals the judgment of the Chancery Court of Rankin County, which held that she was entitled to $3,000 for back child support and $1,000 in attorney’s fees, but not entitled to reimbursement for pregnancy and childbirth expenses or allergy-proofing her home due to her child’s medical needs. Sarah argues that the chancellor [2] erred by: (1) refusing to award compensation for pregnancy and childbirth expenses; (2) awarding only $3,000 in back child support; (3) refusing to award compensation for special medical needs of the child; and (4) only awarding $1,000 in attorney’s fees. Sarah also argues this Court should award attorney’s fees for this appeal.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On October 29, 2009, Sarah filed a complaint for filiation and child support, alleging that James Williams was the father of her child born out of wedlock on June 3, 2009. DNA test results confirmed that James was in fact the father of the child. After paternity was established, James began making voluntary child-support payments to Sarah in the amount of $1,000 per month.[3] After discovery and the filing of several motions, the parties agreed that James would make child-support payments of $1,170 [4] per month, provide medical insurance for the child, and pay 90% of uncovered medical expenses, and that a temporary injunction prohibiting Sarah from contacting James and his family would be made permanent. However, James’s mother was exempted from the provisions of the injunction.
¶ 4. Once the trial began on December 15, 2014, the only contested items were the amount of compensation that Sarah should *707 receive for medical expenses related to the pregnancy and birth of the child, back child support for an undisputed ten-month period in which James provided no support, attorney’s fees, and expenses for unique medical needs of the child. Sarah testified as to the medical expenses she had incurred as a result of the pregnancy and childbirth expenses incurred before James began paying child support, and the special medical needs of the child. Sarah’s mother also testified as to daycare expenses she incurred on behalf of her daughter. The chancellor found that Sarah was entitled to a total of $3,000 in child support for the first ten months of the child’s life, and $1,000 in attorney’s fees for the paternity action. The chancellor did not award Sarah any compensation for expenses, allegedly incurred by her, that were related to pregnancy, childbirth, or the child’s special medical needs. Sarah now appeals the ruling of the chancery court.
STANDARD OF REVIEW
¶ 5. Our standard of review is well settled:
The chancellor’s findings of fact will not be reversed if there is any substantial credible evidence which supports [them]. Therefore, if there is supporting evidence and even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor’s findings unless manifestly wrong.
Pacheco v. Pacheco, 770 So.2d 1007, 1009 (¶ 8) (Miss.Ct.App.2000).
DISCUSSION

I. Pregnancy and Childbirth Expenses

¶ 6. Sarah contends that the chancellor erred in refusing to award compensation for the pregnancy and childbirth expenses she incurred. She states that she was charged approximately $16,000 plus an additional $200 to $400 for expenses related to her pregnancy and childbirth. She argues that James should have been responsible for a portion of those costs. She notes that pursuant to Mississippi Code Annotated section 93-9-7 (Rev. 2013), James is just as responsible as if the child were bom to a lawful marriage.[5] Citing Atwood v. Hicks, 538 So.2d 404, 406 (Miss.1989), Sarah further contends that the expenses incident to her pregnancy and childbirth are recoverable in a paternity suit. She also cites Daniels v. Bains, 967 So.2d 77, 79 (¶ 3) (Miss.Ct.App.2007), in which a chancellor ordered a father to reimburse the mother for all out-of-pocket expenses incurred as a result of pregnancy. She contends that she submitted bills to the court to support her claims for reimbursement; therefore, she submits that the chancellor should have ordered James to reimburse her for those expenditures.
¶ 7. On the other hand, James notes that Sarah failed to offer proper proof of those expenses to the court. He also points out that Medicaid paid $15,000, attributable to the birth expenses, along with other expenses incurred during the last eight weeks of her pregnancy. He argues that although the chancellor, in order to assist him in his questioning, took it upon himself to look at documents that had not been submitted into evidence, it would have been reversible error if the chancellor had considered them in his opinion. See Pruitt v. Pruitt, 144 So.3d 1249, 1253 (¶ 11) (Miss.Ct.App.2014) (“[I]t was an abuse of discretion to consider evidence that was outside *708 the record,”).- We agree. Despite Sarah’s argument to the contrary, the documents were not admitted into evidence, and the chancellor was not manifestly wrong in deciding she was not entitled to an unsubstantiated reimbursement.

II. Back Child Support

¶ 8. Sarah contends that the chancellor erred in awarding only $3,000 in back child support for the ten-month period of the child’s life in which James paid no child support. She argues that the payments amount to only $300 per month during that time, which is well below the $1,170 payments that were stipulated to before trial, In addition to medical expenses, she argues she also incurred regular expenses in caring for the child, such as daycare, food, clothing, and transportation. Sarah’s mother testified that she was paying $1,500 per month on Sarah’s behalf for daycare expense alone, Sarah contends that she was responsible for all of the child’s needs for the first ten months of her life, and that James was not exercising any visitation rights with the child. Because of this, she asserts that the award should be adjusted upward, especially considering James’s ability to pay. She further asserts that although “[mjatters such as [back child support] are left to the discretion of the chancellor,” the chancellor did not provide any reason for his award and it should be adjusted. McClee v. Simmons, 834 So.2d 61, 65 (¶ 13) (Miss.Ct.App.2002).
¶ 9. Naturally, James disagrees. He notes that he voluntarily paid Sarah approximately $58,000. And he argues that Sarah failed to adequately prove the expenses. The chancellor has an obligation to “consider all circumstances relevant to the needs of the children and the capacities of the parents.” Chesney v. Chesney, 910 So.2d 1057, 1061 (¶ 8) (Miss.2005) (citation omitted). Sarah was unclear as to which bills were incurred during the child’s first ten months of life and which bills came later, Although Sarah’s mother testified to paying for daycare, she did not bring the proof of the payments to trial to have them properly admitted into evidence. This Court stated in Ewing v. Ewing, 749 So.2d 223, 224 (¶ 5) (Miss.Ct.App.1999):
When the chancellor sits as fact-finder in cases such as this, he is charged with assessing the credibility of the witnesses and deciding what weight to give to the testimony and evidence. Because he sees the witnesses first hand and can observe their temperament and demeanor, he is in a much better position to assess the worth of any particular testimony than is an appellate court reviewing only a written transcript. This necessarily requires that the chancellor be afforded substantial discretion in his evaluation of the probative value of the evidence. On appeal, our Court must give deference to the chancellor’s findings and may interfere with the chancellor’s findings of fact only if we are convinced that the chancellor has substantially abused the discretion afforded him in such matters.
(Internal citations omitted).
¶ JO. It was within the chancellor’s discretion to find that there was inadequate proof of the expenses at issue. We do not find that the chancellor was manifestly wrong or abused his discretion in arriving at his award. As such, this issue is without merit.

III. Special Medical Expenses

¶ 11. Sarah contends that the chancellor erred in refusing to award her expenses necessary to allergy-proof her home due to the child’s medical condi *709 tions.[6] Citing Hammett v. Woods, 602 So.2d 825, 828-29 (Miss.1992), she argues that a noncustodial parent may be required to pay for expenses incurred as a result of a child’s disabilities and/or medical conditions. She contends that the chancellor erred as a matter of law by not awarding any portion of the alterations, as they were necessary based on the child’s special medical needs.
¶ 12. There was no proof entered at trial to substantiate the expenses Sarah claimed.[7] “To the extent that the evidence on which the chancellor based his opinion was less informative than it could have been, we lay that at the feet of the litigants and not the chancellor.” Dunaway v. Dunaway, 749 So.2d 1112, 1121 (¶ 28) (Miss.Ct.App.1999). We find that the chancellor made the best decision he could with the information that was available. Thus, he did not abuse his discretion. The chancellor sits as the fact-finder and is in the best position to judge the credibility of witness testimony and evidence. Ewing, 749 So.2d at 224 (¶ 5). Since there is no indication that the chancellor was manifestly wrong or abused his discretion, this issue is without merit.

TV. Attorney’s Fees

¶ 13. For the purpose of judicial economy, this section will address the issue of attorney’s fees with respect to the trial court level as well as this appeal. Sarah contends that the trial court erred by only awarding her $1,000 in attorney’s fees for litigation that spanned five years. Quoting Daniels, 967 So.2d at 82 (¶ 17), she argues that “[i]n .,. a paternity action, where it has been demonstrated that a man is the biological father of a child, and a trial court orders the father to pay the mother’s attorney’s fees, the only qualifier incident to that award is that the attorney’s fees must be reasonable.” She further argues that since James was found to be the father in this paternity action, he should bear the cost of her reasonable attorney’s fees over the past five years of litigation. She contends that her attorney gave the chancellor an affidavit in chambers reflecting his fees, but it did not make it into the record, and the chancellor “en-eourage[d] [Sarah’s attorney] not to press that issue The chancellor’s decision regarding attorney’s fees was premised on his. view that the case was not purely a paternity action, because paternity was decided early, although it was not adjudicated until 2014.
¶ 14. Sarah argues that James contribuí ed to the protracted litigation by requesting DNA testing on other men, refusing to cooperate regarding where his DNA test would be performed, filing motions for emergency hearings and then getting them continued, and refusing to respond to discovery requests. Sarah requests that this Court remand the case to determine the correct amount of attorney’s fees she should receive. In addition, she requests attorney’s fees for this appeal.
¶ 15. “If the court makes an order of filiation, declaring paternity' and for the support and maintenance, and education of the child, court costs, including the cost of the legal services of the attorney representing the petitioner, ... and other costs *710 [,] shall be taxed against the defendant.” Miss. Code Ann. § 93-9-45 (Rev. 2013). Although the supreme court has held that “the awarding of attorney’s fees and costs appears automatic” in paternity actions, “they must be reasonable.” Dobbins v. Coleman, 930 So.2d 1246, 1251 (¶ 25) (Miss.2006). The problem in this case is Sarah did not present any information to the chancellor in order for him to conduct an analysis. That was particularly due to the fact that the chancellor encouraged one of Sarah’s former lawyers not to press the issue, but the fact remains that there is no evidence in the record. Absent that information, the chancellor still gave an award.
¶ 16. This Court decided a similar matter in Kelley v. Day, 965 So.2d 749, 755 (¶ 15) (Miss.Ct.App.2007), with respect to attorney’s fees, finding that:
While the court awarded $500 in attorney’s fees to Day, the record reflected that Day provided an attorney billing invoice reflecting amassed attorney’s fees in an amount more than $4,000. We find the award of attorney’s fees reasonable and warranted pursuant to ... section 93-9-45. Therefore, we cannot find that the chancellor erred in awarding attorney’s fees to Day.
Despite Sarah’s argument, Kelley indicates that she is not automatically entitled to the entire amount of attorney’s fees that she incurred or all invoices submitted to the court. We do not find that the chancellor abused his discretion in awarding her $1,000 in attorney’s fees. This issue is without merit.
¶ 17. Regarding Sarah’s request for attorney’s fees on appeal, this issue is succinctly addressed in Huseth v. Huseth, 135 So.3d 846, 861 (¶ 47) (Miss.2014) (internal citations and quotations omitted):
Typically, this Court awards attorney[’s] fees on appeal in an amount equal to half the amount awarded at trial. Monroe v. Monroe, 745 So.2d 249, 253 (¶ 17) (Miss.1999) (quoting Klumb v. Klumb, 194 So.2d 221, 225 (Miss.1967)). In Monroe, the Court denied attomey[’s] fees because the petitioner presented no evidence of the fees charged by her attorney or of the amount of work involved. [The appellee] has presented no evidence of the fees charged by her attorney or the amount of work involved on appeal. Further, as noted by the Court in Monroe, the fees awarded in Klumb were awarded to the prevailing party. [The appellee] has not prevailed. Therefore, we deny her request for attorney's] fees on appeal.
Because Sarah is not the prevailing party in this appeal, we deny her request for attorney’s fees for this appeal.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.

. Aliases have been substituted for the parties’ names.

. County Court Judge Kent McDaniel was appointed an "Acting Chancellor by assignment” as set forth in Mississippi Code Annotated section 9-9-36 (Rev. 2014).

. At the time of the trial, James had paid an undisputed $58,000 in child support to Sarah over a five-year period.

.James's income exceeded $100,000. But the stipulation capped his child-support payments at 14% of $100,000. Therefore, based on the stipulation, James’s child-support payment would have been $1,166.67 per month, but the chancellor rounded the payment up to $1,170 per month.

. Section 93-9-7 provides: "The father of a child [who] is or may be born out of lawful matrimony is liable to the same extent as the father of a child born of lawful matrimony[.]”

. She states that she has incurred expenses because the child suffers from asthma, alope-cia, eczema, nose-bleeds, and pneumonia. She argues that the conditions cause the child to require special laundering of her clothes, and her doctors recommended that her home be allergy-proofed. In furtherance of the doctor’s recommendation, Sarah stated that she spent in excess of $2,800 removing the carpet from her home and staining the concrete to help with the child’s symptoms.

. Sarah’s mother testified that she had written checks for daycare expenses, But the checks were never admitted into evidence, and only marked for identification.