IRVING, J.,
 

 for the Court:
 

 ¶ 1. The Sunflower County Chancery Court granted Jennifer and Phillip Holde-man a divorce on the ground of adultery after concluding that both parties had committed uncondoned adultery. Pursuant to an agreement reached by the parties, the chancellor awarded Jennifer primary physical custody of their minor child, Ann Linden, and ordered Phillip to pay child support. Feeling aggrieved, Jennifer appeals and asserts that the chancellor erred by (1) failing to address the issue of health insurance for Ann Linden, (2) deviating from the child-support guidelines without making a specific finding for doing so, and (3) failing to properly evaluate the marital estate.
 

 ¶ 2. We find merit to issues one and two. Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.
 

 FACTS
 

 ¶ 3. Jennifer and Phillip were married on October 3, 1998. Phillip moved out of the marital home on February 14, 2005, and filed for divorce on May 25, 2007. Jennifer filed an answer and counterclaim for divorce, wherein she sought alimony, custody, child support, and an equitable division of the marital estate. Thereafter, the parties reached an agreement with respect to custody and visitation; however, they were unable to agree on alimony, child support, and the division of the marital estate.
 

 ¶ 4. Jennifer is a registered nurse and has been the director of nursing for the Mississippi Care Center of Greenville since July 2007. She earns $72,800 per year. Phillip, on the other hand, owns a catfish-farming business and is the sole stockholder of Rockin H, Inc. (Rockin H), a closely-held trucking and dirt-moving company. Phillip admittedly receives a $55,000 annual management fee from Rockin H and contends that this is his only income.
 
 [1]
 

 ¶ 5. Before the parties married, Phillip owned 165 acres of catfish ponds and a house located in Inverness, Mississippi, which the parties made their marital residence. Sometime during the marriage, Phillip purchased 290 additional acres of land in Sunflower and Humphreys counties.
 

 ¶ 6. The chancellor valued the marital estate, excluding the marital home, at $589,675, divided the marital estate, and ordered Phillip to pay $400 per month in child support. The chancellor’s order reads, in part, as follows:
 

 That Phillip Holdeman shall pay child support for the support of his minor child, Ann Linden Holdeman. That
 
 *652
 
 Phillip listed his net income at $3,314.00 per month on his financial statement based on 2006 figures. That 14% of that figure is $463.96. He testified at trial that he thought he should pay 14% of $50,000. That 14% of that figure is $583.00 per month. That Phillip testified that he could pay $400.00 per month. That Phillip has agreed that he wishes for his child to remain in private school and therefore he will pay one half of all private school tuition and fees. Phillip shall additionally pay child support in the amount of $400.00 per month beginning on the first day of September, 2008, and continuing’on the first day of each month thereafter.
 

 Additional facts, if necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 7. An appellate court’s “scope of review in domestic[-]relations matters is limited by our familiar substantial evidence/manifest error rule.”
 
 Jones v. Jones,
 
 995 So.2d 706, 712 (¶ 19) (Miss.2008) (quoting
 
 Clark v. Clark,
 
 754 So.2d 450, 458 (¶ 48) (Miss.1999)). “The equitable distribution of marital assets is committed to the discretion of the chancellor, whose findings will not be disturbed by [an appellate court] unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Id.
 
 (quoting
 
 Arthur v. Arthur,
 
 691 So.2d 997, 1003 (Miss.1997)).
 

 1. Health Insurance
 

 ¶ 8. In her first issue, Jennifer argues that the chancellor erred in failing to address the issue of Ann Linden’s health insurance in the final order. Jennifer directs our attention to Mississippi Code Annotated section 43-19-101(6), which provides that:
 

 All orders involving support of minor children, as a matter of lato, shall include reasonable medical support
 
 Notice to the noncustodial parent’s employer that medical support has been ordered shall be on a form as prescribed by the Department of Human Services. In any case in which the support of any child is involved, the court shall make the following findings either on the record or in the judgment:
 

 (a) The availability to all parties of health insurance coverage for the child(ren);
 

 (b) The cost of health insurance coverage to all parties.
 

 The court shall then make appropriate provisions in the judgment for the provision of health insurance coverage for the child(ren) in the manner that is in the best interests of the child(ren).
 

 (Emphasis added). We agree with Jennifer that the chancellor did not address the issue of health insurance for Ann Linden in the order, even though she was required to do so by section 43-19-101(6). Phillip testified that he had always paid the health insurance premium to cover both his daughter and Jennifer. However, Jennifer testified that she was carrying health insurance on herself and that she also had Ann Linden on a dental-insurance policy. There is nothing in the chancellor’s order that requires this arrangement to continue. Therefore, we remand this issue to the chancery court for further consideration. On remand, the chancellor is free to order the continuation of the existing arrangement between the parties or to fashion whatever relief she finds appropriate, taking into consideration the totality of the circumstances.
 

 2. Child Support
 

 ¶ 9. In her next issue, Jennifer contends that the chancellor erred in ordering
 
 *653
 
 Phillip to pay only $400 per month in child support, because the chancellor did not comply with Mississippi Code Annotated section 43-19-101(1), which provides that it shall be a rebuttable presumption that fourteen percent of the adjusted gross income of a non-custodial parent shall be awarded as child support for one child. Jennifer also asserts that the chancellor failed to comply with section 43-19-101(2) because she did not specify why she deviated from the child-support guidelines. Section 43-19-101(2) provides:
 

 The guidelines provided for in subsection (1) of this section apply unless the judicial or administrative body awarding or modifying the child[-]support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.
 
 [2]
 

 Section 43-19-101(3)(a) provides that when determining adjusted gross income, the chancellor shall consider the following sources:
 

 wages and salary income; income from self[-]employment; income from commissions; income from investments, including dividends, interest income and income on any trust account or property; absent parent’s portion of any joint income of both parents; workers’ compensation, disability, unemployment, annuity and retirement benefits, including an individual retirement account (IRA); any other payments made by any person, private entity, federal or state government or any unit of local government; alimony; any income earned from an interest in or from inherited property; any other form of earned income; and gross income shall exclude any monetary benefits derived from a second household, such as income of the absent parent’s current spouse[.]
 

 ¶ 10. Our review of the record leads us to conclude that Phillip’s income is significantly higher than the $54,174 that is reflected on his 8.05 statement.
 
 [3]
 
 We also conclude that Phillip has substantial income which should be considered for child-support purposes, despite the fact that his 2007 Federal Income Tax Return indicates that his adjusted gross income was a negative $191,051. For example, on Phillip’s individual 2007 Federal Tax Return, line 21, other income, he lists a management fee of $55,000.
 
 [4]
 
 On Schedule F, Profit or Loss from Farming, Phillip took a depreciation of $18,151.
 
 [5]
 
 The 2007 Federal Tax Return (Form 1120) for Rockin H shows that the corporation’s total income was $889,455, but that it had a net operating loss deduction of $9,831. More importantly, however, for our purposes, the return shows a depreciation deduction of $127,520
 
 *654
 
 on line 20. We could not find Form 4562, which would explain the depreciation taken, anywhere in the record. It was not attached to the corporate return. Nor is there any explanation in the record as to how the $127,520 depreciation deduction was utilized, even though it was deducted as an expense against the gross income of the corporation.
 

 ¶ 11. We acknowledge that Phillip’s personal 2007 Federal Income Tax Return reflects that he did not have any taxable income; however, it is clear that he still earned money. What is unclear is exactly how much he earned. On remand, the chancellor should carefully scrutinize Phillip’s tax returns to determine if there is any income that should be considered in arriving at Phillip’s adjusted gross income, as specified in section 43~19-101(3)(a). As noted, this section provides that the adjusted gross income should be determined by looking, in part, at “all potential sources that may reasonably be expected to be available to the absent parent....” Accordingly, we reverse and remand for the chancellor to make a proper determination of Phillip’s income and to order child support consistent with section 43-19-101(1).
 

 3. Valuation of the Marital Estate
 

 ¶ 12. In her final issue, Jennifer argues that there was a substantial decrease in the value of the marital assets that were under Phillip’s sole control between the time that he left the marital home on February 14, 2005, and the time that the matter was heard by the chancellor in June 2008. As a result, Jennifer contends that the chancellor should have either valued the marital estate as of May 25, 2007 (the date that Phillip filed for divorce), or the chancellor should have taken an average of the value of the marital estate for the years 2005, 2006, and 2007. Although Jennifer rests her argument on the fact that Phillip’s net worth has declined drastically from $620,720, where it stood in 2005, to $74,000, where it stood at the time of trial, she fails to set forth facts that show dissipation of assets on Phillip’s part. Furthermore, experts for both parties did not dispute that the reason for Phillip’s decline in net worth is the downturn of the catfish industry.
 

 ¶ 13. Moreover, it is clear in this state that “when equitably dividing marital property upon divorce, the date of valuation is necessarily within the discretion of the chancellor.”
 
 Hensarling v. Hensarling,
 
 824 So.2d 583, 591 (¶ 25) (Miss.2002) (quoting
 
 MacDonald v. MacDonald,
 
 698 So.2d 1079, 1086 (¶ 35) (Miss.1997)). On these facts, we cannot find that the chancellor abused her discretion in valuing the marital estate as of the date of the trial. This issue lacks merit.
 

 ¶ 14. THE JUDGMENT OF THE SUNFLOWER COUNTY CHANCERY COURT IS AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE AP-PELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., BARNES, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. GRIFFIS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . As will be discussed later in this opinion, we find that Phillip receives considerably more income that should be taken into consideration in figuring his adjusted gross income for child-support purposes under Mississippi Code Annotated section 43-19-101(3) (Rev. 2009).
 

 [2]
 

 . Mississippi Code Annotated section 43-19-103 (Rev.2009) sets forth circumstances that permit a chancellor to deviate from the child-support guidelines. However, none apply to the facts of this case.
 

 [3]
 

 . Rule 8.05 of the Uniform Chancery Court Rules requires parties in domestic cases involving economic issues or property division to submit a financial disclosure statement. The $54,174 listed on Phillip’s 8.05 statement apparently represents the management fee that he testified that he received from Rockin H. There is no explanation as to why he listed the fee as $54,174 on his 8.05 statement instead of the $55,000 that he testified that he received from Rockin H.
 

 [4]
 

 . Even though Phillip received $55,000 in management fees, he actually lists a loss of $2,508 on line 21. This is because, as explained in an attachment, he had a net operating loss of $57,508 from the previous year.
 

 [5]
 

 . Schedule F reflects gross income from catfish farming of $486,620. The schedule also shows a net farm loss of $184,163.